IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01792-RM-MJW

DANNY COOK,

Plaintiff(s),

v.

DR. TIMOTHY CREANY,
SGT. ROMY GRADISAR, and
LT. JEFF HAWKINS,

Defendant(s).

---

## RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1) and (6)
## (Docket No. 20)

---

**Entered by Magistrate Judge Michael J. Watanabe**

This matter was referred to this court pursuant to an Order Referring Case issued by Judge Raymond P. Moore on September 24, 2013 (Docket No. 11).

**PLAINTIFF'S ALLEGATIONS**

In his Prisoner Complaint (Docket No. 4), which is brought pursuant to 42 U.S.C. § 1983, plaintiff asserts that his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights were violated because defendants had been deliberately indifferent to his serious medical issues, lost his personal property, and retaliated against him for filing a grievance. He seeks monetary damages. In an Order entered on August 28, 2013 (Docket No. 7), Senior Judge Lewis T. Babcock dismissed three defendants (Wilson, Pasewark, and DeCesaro) as improper parties to this action. Thus, the remaining claims are against defendants Dr. Timothy Creany (clinic doctor at Fremont Correctional

2

Facility ["FCC"]), Sergeant Romy Gradisar, and Lieutenant Jeff Hawkins.  Plaintiff

alleges the following two claims against these three remaining defendants.

**Claim 1.**  On October 22, 2010, plaintiff had surgery on his right shoulder as a

result of a "severe anterior dislocation and a malunited greater tuberosity fracture."

(Docket No. 4 at 8).  The post-operative diagnosis was that he would never regain full

use of his dominant right arm and shoulder and suffer severe arthritis.  Evaluation by his

surgeons and physical therapists confirm it is a chronic injury that will only worsen with

time, which has occurred, and that he might retain 50 percent mobility.  He was given a

lifting restriction of no more than 15 pounds and a lower bunk restriction by the Adams

County Detention Facility medical staff since the limited use of his dominant right arm

constituted a medical disability and inability to climb.

In May 2011 plaintiff arrived at FCC, and Dr. Creany reviewed plaintiff's complete

medical file.  Approximately one year after plaintiff's arrival, without performing a

physical examination, Dr. Creany removed the lower bunk restriction.  Consequently,

plaintiff has been assigned to a top bunk.  Because of his limited mobility of his right

shoulder, plaintiff cannot raise his arm above his rib cage, and thus he can use only one

arm while climbing the ladder to his bunk.  As a result, he risks serious physical injury

each time he enters or exits his bunk because he is unable to use two hands should he

slip.  Being forced to lift his weight, contrary to the lifting restriction, is a willful and

wanton disregard to plaintiff's health and safety and displays deliberate indifference to

his medical disability.  Dr. Creany violated plaintiff's Eighth and Fourteenth Amendment

rights.

3

**Claim 3(A) and (B).**   On August 20, 2012, plaintiff was moved to administrative

segregation while under investigation.   After twelve days and being exonerated, he was

released back to general population, only to discover on September 4, 2012, that

approximately $94 of his property was missing.   After filing a grievance regarding the

property loss, plaintiff was subjected to retaliation by cell house staff members Sgt.

Gradisar and Lt. Hawkins.   Plaintiff has been involved in excessive "shake downs," has

been threatened with write ups, has been denied green "movement" passes, and was

denied his right to speak to the shift commander for an explanation.

More specifically, on October 18, 202, the excessive shake down lasted several

hours, and plaintiff was intimidated during the process.   Four separate times plaintiff

was ordered to pack and unpack the green DOC duffle by Gradisar to ensure property

size compliance.   Gradisar made arbitrary and inconsistent rulings concerning what was

considered electrical items (which are excluded from the three cubic feet of personal

property) and legal papers (pursuant to an administrative regulation, resource

documents are included as legal documents) within the legal box.   Gradisar violated

plaintiff's First, Fourth, and Eighth Amendment rights regarding freedom of speech,

unreasonable search, and cruel and unusual punishment.

This retaliation continued while under the supervision of Lt. Hawkins when

plaintiff was ordered by him to once again pack and unpack in his presence in his office,

albeit already being compliant with Sgt. Gradisar's demands.   This was another act of

retaliation done to humiliate plaintiff.   Plaintiff's request to speak with the shift

commander for an explanation was denied.   A total of eight shake downs occurred in

twelve days, which is outside the normal scope of prison life.   Hawkins violated plaintiff's

4

First, Fourth, and Eighth Amendment rights regarding freedom of speech, unreasonable

search, and cruel and unusual punishment.

## DEFENDANTS' MOTION TO DISMISS

Now before the court for a report and recommendation is the defendants' Motion

to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and (6), or pursuant to Rule 56 in light of

an attached affidavit (Docket No. 20), in which they seek dismissal of the Prisoner

Complaint on the following grounds: (1) claims for monetary damages against

defendants in their official capacities are barred under the Eleventh Amendment, (2)

failure to exhaust administrative remedies with regard to the retaliation claims against

Gardisar and Hawkins, (3) failure to state an Eighth Amendment claim, (4) Creany is

entitled to qualified immunity, and (5) failure to state a viable claim for compensatory

damages for mental and emotional distress or for punitive damages.  Plaintiff filed a

Response.  (Docket No. 28).  The court has carefully considered the motion and

response as well as applicable Federal Rules of Civil Procedure.  In addition, the court

has taken judicial notice of the court file.  The court now being fully informed makes the

following findings, conclusions of law, and recommendation.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the
subject matter."  Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction,
federal courts may only adjudicate cases that the Constitution and
Congress have granted them authority to hear.  *See* U.S. CONST. art. III,
§ 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes
conferring jurisdiction on federal courts are to be strictly construed.  *See F
& S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule
12(b)(1) motion to dismiss "must be determined from the allegations of
fact in the complaint, without regard to mere conclusory allegations of
jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).
The burden of establishing subject matter jurisdiction is on the party

5

asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to

relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2

(D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127

S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide

the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atlantic

Corp., 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise

a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims

across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .

6

Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "Accordingly, in examining a

complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be admissible. . . . The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."' . . . Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because

8

'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" <u>Adams v. American Guarantee & Liability Ins. Co.</u>, 233 F.3d 1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." <u>Southway</u>, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." <u>Id.</u>; <u>Robertson</u>, 78 F. Supp.2d at 1146 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); quoting <u>White v. York Int'l Corp.</u>, 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." <u>Southway</u>, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." <u>Id.</u> at 1273.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor

9

syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .

At the same time, . . . it is [not] the proper function of the district court to assume the

role of advocate for the pro se litigant." Id.

**Official Capacity.**  Defendants correctly asserts that to the extent the plaintiff is

suing them in his official capacity for damages,[1] they are entitled to immunity pursuant

to the Eleventh Amendment.  It is well established that "neither a State nor its officials

acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dept. of

State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a

federal court from assessing damages against state officials sued in their official

capacities because such suits are in essence suits against the state." Hunt v. Bennett,

17 F.3d 1263, 1267 (10th Cir. 1994).  Therefore, to the extent that the plaintiff's claims

against defendants are against them in their official capacities for monetary damages,

such relief is barred by the Eleventh Amendment, and any such claims should be

dismissed with prejudice.

**Exhaustion.**  Defendants next assert that the plaintiff failed to exhaust his

administrative remedies with regard to his retaliation claims against Gardisar and

Hawkins.  The Prison Litigation Reform Act of 1995 (" PLRA") provides that "[n]o action

shall be brought with respect to prison conditions under section 1983 of this title, or any

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

---

[1]Plaintiff states in his response that "[t]here are no monetary damages requested per the resolution submitted to Ms. Gellar on 11-20-13.  Only a refund for the filing fee, replacement cost for stolen property by staff and compensation for necessary legal work."  (Docket No. 28 at 1).  Plaintiff, however, has not moved to amend his Prisoner Complaint to reflect this.

10

until such administrative remedies are available are exhausted." 42 U.S.C. § 1997e(a).

The PLRA requires exhaustion as a "precondition" to bringing litigation and requires

dismissal where a litigant has failed to complete exhaustion before initiating a suit. See

Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1140-41 (10th Cir. 2005). This

exhaustion requirement "is mandatory, and the district court [is] not authorized to

dispense with it." Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th

Cir. 2003). Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking

redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520

(2002). The "failure to exhaust is an affirmative defense under the PLRA, and . . .

inmates are not required to specially plead or demonstrate exhaustion in their

complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). As an affirmative defense, "the

burden of proof for the exhaustion of administrative remedies in a suit governed by the

PLRA lies with the defendant." Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir.

2007).

The Colorado Department of Corrections ("CDOC") has a multi-step

administrative grievance process available to inmates set forth in its regulations which

entails first a written informal grievance and then a formal three-step written grievance

procedure. See CDOC Administrative Regulation 850-4; Aff. of Anthony Decesaro,

Docket No. 20-1 at ¶¶ 4-8. Here, through the affidavit of CDOC Step 3 Grievance

Officer Anthony DeCesaro (Docket No. 20-1) defendants have shown that the plaintiff

did not exhaust the administrative remedies made available to him by the CDOC

because he did not file any Step 3 grievances concerning his complaints that Gradisar

and Hawkins were retaliating against him. Accordingly, defendants argue that the

11

plaintiff's claims against Gradisar and Hawkins are barred by the PLRA.

Plaintiff responds that

It is fruitless for the Plaintiff to file a step 3 grievance when step 2 grievance is replied to as "Resolved" by Major Jay Hudson (Custody Controll Manager). Any step 3 grievance will result in a response as an "already addressed topic" and no further action will be taken. A step 3 grievance in this case is systematically denied without even being filed. Therefore the administrative remedy is procedurally exhausted.

Incidentally, being exhausted or not should not be critiqued as a loophole. C.O. Cortese did state to the Plaintiff at the time the multiple shakedowns (retaliation) was a result of the Plaintiff filing a grievance.

(Docket No. 28 at 1). Plaintiff's futility justifications, however, are unavailing. "The Supreme Court has declined to read 'futility or other exceptions' into the PLRA's exhaustion requirement." Chapman v. Lampert, 2014 WL 464227, at *3 (10th Cir. Feb. 6, 2014) (citing Booth v. Churner, 532 U.S. 731, 741 n.6; Hamby v. Jordan 55 F. App'x 887, 888 (10th Cir. 2003)). Through the PLRA, Congress "eliminated both discretion to dispense with administrative exhaustion and the condition that it be 'plain, speedy, and effective.'" Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) (quoting Booth, 532 U.S. at 739). "Where a remedy is 'available'--even if its effectiveness is questionable--a prisoner must exhaust it. . . . [Plaintiff] has not demonstrated that the grievance-appeal process was 'unavailable' to him. Nor has he demonstrated an absence of any relief available, rendering further steps unnecessary." Chapman, 2014 WL 464227, at *3. Plaintiff has not shown that his step 2 grievance was marked "resolved" or that even if it was so marked, he would be unable to submit a step 3 grievance in which he challenged that determination. A review of the applicable Administrative Regulations concerning grievances, AR 850-04, shows no such

12

prohibition.

Based on the findings above, it is recommended that the claims against Gradisar

and Hawkins be dismissed without prejudice.

**Eighth Amendment Claim.**  Defendants next assert that the plaintiff's Eighth

Amendment claim against Dr. Creany fails to state a claim upon which relief can be

granted.

To state a cognizable Eighth Amendment claim for denial of medical care,

plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A

"deliberate indifference" claim involves both an objective and subjective component.

Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).  In this case, plaintiff must

show both that he suffered a "sufficiently serious" harm (the objective element) and that

defendant knew and disregarded "an excessive risk" to plaintiff's health (the subjective

element). See Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005); Callahan v. Poppell,

471 F.3d 1155, 1159 (10th Cir.2006).

A sufficiently serious medical need is "one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention."  Sealock, 218 F.3d at

1209.  An Eighth Amendment violation for denial of medical care arises where a

defendant subjectively knows of an excessive risk to the plaintiff's health, but

nevertheless disregards that risk.  Self v. Crum, 439 F.3d 1227, 1230-31 (10th Cir.

2006).  "For a prison official to be found liable for deliberate indifference under the

Eighth Amendment, the official must 'know[ ] of and disregard[ ] an excessive risk to

13

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference." Perkins v. Kansas Dep't of Corrs., 165 F.3d 803, 809 (10th Cir. 1999).  "[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."  Self, 439 F.3d at 1232.  To raise a viable Eighth Amendment claim, plaintiff must show a "deliberate refusal to provide medical attention, as opposed to a particular course of treatment."  Fleming v. Uphoff, 2000 WL 374295, at *2 (10th Cir. Apr. 12, 2000) (citation omitted).  It is not enough to show that a defendant provided ineffective or even negligent medical treatment. Duffield v. Jackson, 545 F.3d 1234, 1238 (10th Cir. 2008).

Here, plaintiff claims that Dr. Creany was deliberately indifferent to his medical disability because he reviewed plaintiff's complete medical file upon plaintiff's arrival at FCC, but one year later, without performing a physical examination, he removed the lower bunk restriction.  To the extent plaintiff alleges that Dr. Creany knew of his medical condition, yet removed the lower bunk restriction, the court finds that Dr. Creany's decision qualifies as a medical judgment, and plaintiff's difference of opinion with Dr. Creany does not rise to the level of a constitutional violation.  Holt v. Wermers, 2013 WL 328936, at * 2 (D. Colo. Jan. 29, 2013) ("To the extent plaintiff alleges that [the doctor] knew of his medical condition . . . yet removed the lower bunk restriction, the Court finds that [the doctor's] decision qualifies as a medical judgment and plaintiff's difference of opinion with [the doctor] does not rise to the level of a constitutional violation."); Green v. Branson, 108 F.3d 1296, 1303 (10th Cir.1997) (finding that a disagreement with a prison official's medical judgment does not constitute an Eighth

14

Amendment violation); <u>Callahan</u>, 471 F.3d at 1160 (finding that, generally, "a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment").

Construing plaintiff's pleading liberally, he may also be asserting an Eighth Amendment claim against Dr. Creany for the denial of humane conditions of confinement.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  Under the Eighth Amendment, certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment.  <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986).  To establish an Eighth Amendment claim premised upon deliberate indifference to inhumane conditions of confinement, plaintiff must show (1) he is incarcerated in conditions posing a substantial risk of serious harm to his health and safety, and (2) that Dr. Creany imposed or continued these conditions with a sufficiently culpable state of mind.  <u>Farmer</u>, 511 U.S. at 832.  In the prison context, a sufficiently culpable state of mind "is one of deliberate indifference to inmate health and safety." <u>Craig v. Eberly</u>, 164 F.3d 490, 495 (10th Cir. 1998).  The objective component of the test is met if the harm suffered is sufficiently serious or is an extreme deprivation. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8-9 (1992).  The subjective component is met if a prison official knows of and disregards excessive risks to an inmate's health and safety. <u>See</u> <u>Tafoya v. Salazar</u>, 516 F.3d 912, 916 (10th Cir. 2008). To meet the subjective element of this inquiry, plaintiff must allege that Dr. Creany knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate the harm.  <u>Hunt v. Uphoff</u>, 199 F.3d 1220, 1224 (10th Cir. 1999). Here, the court finds that plaintiff has failed to show that Dr. Creany was deliberately

indifferent to plaintiff's serious risk of bodily harm.  As noted by the defendants, plaintiff's allegations do not show that the termination of the lower bunk restriction has placed him at substantial risk of serious harm.  There are no allegations that he has ever slipped, even though Dr. Creany terminated the restriction in May 2012.  Plaintiff's allegations only show that plaintiff is worried that he might slip.  Furthermore, his surgery was performed over three years ago, and his allegations demonstrate that he has only some limitations on the use of just one arm, i.e., inability to raise that arm above his rib cage; there is no allegation that he has issues with his other arm or with his legs and that he is unable to climb the ladder to an upper bunk.  The court agrees with the defendants that these allegations do not demonstrate that Dr. Creany has placed plaintiff at excessive risk of serious harm, as necessary to show that he violated plaintiff's Eighth Amendment rights.

In sum, it is unclear from the Prisoner Complaint whether plaintiff bases his Eighth Amendment claim against Dr. Creany on his medical treatment or on his failure to ensure plaintiff's safety from serious bodily harm.  Regardless of the nature of the plaintiff's claim, the court finds that plaintiff's allegations are insufficient to raise an Eighth Amendment claim.  See Holt v. Wermers, 2013 WL 328936, at *1.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and (6) (Docket No. 20) be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve**

16

and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Date:  April 10, 2014
      Denver, Colorado

s/ Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge